UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANDREW ROBERTS,

    Petitioner,

v.                                        Case No. 10-C-0067

MICHAEL THURMER, Warden,
Waupun Correctional Institution,

    Respondent.

**DECISION AND ORDER DISMISSING FEDERAL HABEAS
CORPUS PETITION FOR UNTIMELINESS**

**I. BACKGROUND**

On January 26, 2010, the petitioner, Andrew Roberts ("Roberts"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. According to his petition and the other submissions on file, on October 5, 2001, a judgment of conviction was entered in the Milwaukee County Circuit Court against Roberts for one count of felony murder-armed robbery, party to a crime, in violation of Wis. Stat. § 939.05. The judgment of conviction was entered after Roberts pled guilty to the single count. Roberts was sentenced to a term of sixty years of imprisonment, comprised of thirty-five years of initial confinement and twenty-five years of continued supervision.

On November 11, 2002, Roberts filed a motion to withdraw his guilty plea. The circuit court denied the motion on November 13, 2002. This was Roberts' only attempt at direct appeal of his conviction.

More than four years later, on May 29, 2007, Roberts filed a petition for a writ of state habeas corpus in the Milwaukee County Circuit Court. In his state habeas corpus petition, Roberts argued that trial counsel provided ineffective representation. This petition was denied on June 7, 2007.

Thereafter, on September 30, 2008, the Wisconsin Court of Appeals affirmed the circuit court decision. The Wisconsin Supreme Court denied Roberts' petition for review on January 13, 2009.

Roberts filed his federal habeas corpus petition on January 26, 2010. The petition was randomly assigned to Chief United States District Judge Charles N. Clevert. Upon Rule 4 review, Judge Clevert issued an order on April 16, 2010, in which he directed the respondent to file a brief addressing the timeliness of the petition within thirty days. Pursuant to the order, Roberts then had thirty days after being served with the respondent's brief to file a response. On May 5, 2010, upon the parties' consenting to magistrate judge jurisdiction, Judge Clevert assigned the case to this court for further processing and entry of final judgment.

On May 15, 2010, the respondent, pursuant to Chief Judge Clevert's order, filed a brief on the timeliness issue. Thereafter, on June 1, 2010, Roberts requested a thirty day extension to file a response brief, which request was granted on June 3, 2010. Roberts filed his response brief on July 15, 2010. Thus, the issue of timeliness is now fully briefed and is ready for resolution. For the reasons that follow, Roberts' federal habeas corpus petition will be dismissed due to untimeliness.

## II. DISCUSSION

Habeas petitions challenging the petitioner's confinement pursuant to a state court conviction are subject to the statute of limitations set forth in 28 U.S.C. § 2244. That section provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute of limitations applies to petitions that, like Roberts' petition, are filed after April 24, 1996—the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Newell v. Hanks*, 283 F.3d 827, 832 (7th Cir. 2002). The statute specifies when the one-year period begins to run and also provides that the period of limitations is tolled while certain state proceedings are pending.

> The limitation period shall run from the latest of-
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> >
> > (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The parties agree that the appropriate date from which to begin Roberts' one-year filing period is established by § 2244(d)(1)(A). This section begins the one-year filing period at the conclusion of direct review or the time for seeking such review. It is over the application of this particular provision to the facts of this case that the parties are in dispute.

Pursuant to Wis. Stat. § 809.30(2)(j), Roberts had until December 3, 2002—twenty days from the denial of his motion to withdraw his guilty plea—to commence an appeal by filing a notice of appeal in the circuit court. The respondent argues that Roberts' time for filing his federal habeas petition expired one year later, on December 3, 2003. The respondent cites *Farmer v. Litscher*, 303 F.3d 840, 845-46 (7th Cir. 2002), to support the proposition that Roberts' "filing period began to run when his time expired for him to take the next step in Wisconsin's appeal process." (Resp't's Br. at 6.) In *Farmer*, the conviction of a Wisconsin defendant became final for purposes of § 2244(d)(1)(A)

3

after the defendant failed to take direct state court action, allowing the time to appeal expire under § 809.30.

Roberts advances two interrelated arguments in asserting that his direct appeal has not been completed and, therefore, the one year filing period has not yet begun. Roberts first argues that the holding in *Farmer* is inconsistent with the Supreme Court's holding in *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999). Roberts contends that *O'Sullivan* requires "that all claims [] be exhausted by presenting [them] to each court in the appellate process." (Pet'r's Br. at 4.) Roberts also states that "[i]t does not make sense that one section would allow you to start the clock at the end of an incomplete direct appeal only to default on another section that requires the appeal process be completed." (Pet'r's Br. at 4-5.)

However, Roberts unnecessarily confuses the exhaustion requirement in *O'Sullivan* with the timeliness instruction in *Farmer*. *O'Sullivan* "requires only that state prisoners give state courts a *fair* opportunity to act on their claims" before presenting those claims to a federal court in a habeas petition in the interests of federal-state comity. 526 U.S. at 844-45. In the event that a state prisoner fails to give the state court an opportunity to act on direct review in a timely fashion, *Farmer* sheds light on when the one-year filing period begins to run. Because the timeliness requirement and the exhaustion requirement can coexist, the timeliness requirement does not prevent Roberts from complying with the exhaustion requirement.

Roberts' next—and more to the point—argument is that *Farmer* does not support the respondent's position because his appeal was "abandoned" rather than simply allowed to expire. Specifically, Roberts states that he "did not conclude direct review of his conviction because his attorney allowed a deadline to expire and then abandoned the appeal.*"* (Pet'r's Br. at 5.) In making this argument, Roberts is undoubtedly referring to the letter he received from his attorney on

December 6, 2002. The Wisconsin Court of Appeals summarized the December 6, 2002 letter as follows:

> ¶4. By letter dated December 6, 2002, counsel wrote to Roberts regarding his analysis of the circuit court's postconviction decision. Counsel stated that he believed an appeal would have "no legal merit" and that "the only appellate representation I could provide at this time would be in the form of a no-merit report pursuant to [WIS. STAT. RULE 809.32(1999-2000)]." Counsel advised Roberts as to the contents and purpose of a no-merit report, Roberts' opportunity to file a response, and this court's subsequent independent review of the filings and record. Counsel further advised Roberts that if this court found issues of arguable merit, it could order further postconviction or appellate proceedings. Counsel noted, however, that if this court agreed with his analysis, it would affirm the conviction and release him from further representation of Roberts.
>
> ¶5. Counsel then explained to Roberts that, in light of that analysis, he had three options:
>
> 1. You could have me file a no-merit report as detailed above;
>
> 2. You could have me close the file without an appeal; or
>
> 3. You could discharge me and proceed on your own (pro se) or with an attorney retained at your own expense.
>
> Counsel noted that Roberts had indicated in their prior telephone discussion that he had not yet made a decision as to how he wished to proceed. He further stated that should Roberts instruct him "to close my file without an appeal or further court action, this choice would end your direct appeal" and would also limit or eliminate Roberts' postconviction and appellate options in state and federal court. Counsel also advised Roberts that should he choose to close the file without action "[n]o other lawyer [would] be appointed to represent" him.
>
> ¶6. After counsel invited Roberts to contact him with questions, he stated that he expected to hear from Roberts no later than January 6, 2003 "with instruction as to how to proceed in this case." Counsel concluded: "Should I not hear from you by Monday, January 6, 2003, please be advised that I will interpret that to mean that you do not wish to have me file a no-merit report as outlined above, and I will close my file without an appeal or further court action."

*State ex rel. Roberts v. Thurmer*, 2008 WI App 160, ¶¶ 4-6, 314 Wis. 2d 507, ¶¶ 4-6, 758 N.W.2d 224, ¶¶ 4-6 (unpublished) (footnotes omitted).

Contrary to Roberts' contention, he was not "abandoned" by counsel in the December 6, 2002 letter. Rather, the letter informed Roberts that his attorney believed there were no remaining appealable issues. In the letter, the attorney states that "the only appellate representation I could provide at this time would be in the form of a no-merit report pursuant to § 809.32, Wis. Stats." The Wisconsin Supreme Court has explained the importance of a no-merit report:

> It is designed to cover those situations when the counsel appointed under sec. 809.30 or ch. 977 concludes that there would be no merit to a given criminal defendant's appeal and therefore seeks to withdraw from the defendant's case. The No Merit report option gives the criminal defendant the option to compel counsel to document why counsel is of the opinion that the appeal would have no merit. The defendant may then respond and the court of appeals will determine whether there is any merit to the appeal. Accordingly, it follows that a criminal defendant must be informed about the No Merit option when it becomes *relevant* to the defendant's decision as how to exercise the rights of appeal.

*State ex rel. Flores v. State*, 183 Wis. 2d 587, 606, 516 N.W. 2d 362, 367 (Wis. 1994).

Roberts' right to counsel ended when his attorney determined that there were no appealable issues of arguable merit. *See State ex rel. Schmelzer v. Murphy*, 201 Wis. 2d 246, 252, 548 N.W. 2d 45 (1996) (a defendant's right to counsel during a direct appeal ends when "counsel determine[s] appeal to be without merit"). However, Roberts was still afforded the protection of a no-merit report. *See Flores,* 183 Wis. 2d at 605-06 ("The No Merit report option is available as part of the appeal as a matter of right."). The defendant must be informed of the no-merit report option when it becomes relevant to the defendant's decision to appeal. *Id.* To be sufficient, "the defendant must know of the option to disagree with counsel's suggestion not to pursue the appeal further, and that by disagreeing with counsel the defendant may compel counsel to submit a No Merit report." *Id.* The December 6, 2002 letter clearly satisfied this requirement. *See id.* at 611-12 (defendant properly informed of no-merit option through initial mailing by State Public Defender Office entitled "Information for Clients").

However, after being informed of the no-merit report option, the defendant must actually disagree with counsel's advice and express a desire to appeal. *Id.* at 617-18. If the defendant does not do so, the defendant will be presumed to have validly waived the no-merit report option. *Id.* After being informed of the no-merit report, in compliance with § 809.32, Roberts did not express any desire to have his attorney file a no-merit report. Therefore, pursuant to Wis. Stat. § 809.32, it was appropriate for Roberts' attorney to close his file without filing a no-merit report.

Roberts points out, and respondent agrees, that the December 6, 2002 letter was received three days after the period to file a notice of appeal had expired. However, the delay in receiving the letter would not necessarily have prevented Roberts from filing an appeal. First, the presumption that the defendant waived his right to a no-merit report may be rebutted by showing "exceptional circumstances or good cause for a failure to file the appeal on time." *Id.* at 618. In addition, under Wis. Stat. § 809.82(2), a party may file a motion seeking an enlargement of time for doing any act under Chapter 809 after the expiration of a prescribed time period. Pursuant to the letter, Roberts had until January 6, 2003 to respond, with instructions on how he wished counsel to proceed. Even if this court were to toll the beginning of the one-year period until January 6, 2003 to allow for Roberts' response to the letter, the one-year period would have expired on January 6, 2004. This proves troublesome for Roberts because he did not seek further action until filing his state petition for a writ of habeas corpus more than four years later, on May 29, 2007.

Because Roberts' attempts to distinguish *Farmer* prove unpersuasive, Roberts' one-year filing period began when his state court appeal expired on December 3, 2002. Because the one-year period runs from the latest applicable § 2244 subsection, absent a finding that a different subsection prescribes a later starting date, Roberts' one-year period expired on December 3, 2003. In other words, Roberts' federal habeas petition needed to be filed no later than December 3, 2003.

Alternatively, Roberts argues that "[i]f the court determines that [§ 2244(d)(1)(D)] controls the timeliness of this petition then it should find that the factual predicate of the claims presented could not have been discovered prior to when Roberts filed his state court petition on May 29, 2007." (Pet'r's Br. at 5.) Although the court believes that the applicable starting point for the one-year filing period is established by § 2244(d)(1)(A), as outlined above, the court will address Roberts' argument and explain why § 2244(d)(1)(D) is not applicable.

Under § 2244(d)(1)(D), the statute of limitations begins to run "on the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(D). To support its applicability, Roberts claims his attorney "abandoned his direct appeal without obtaining an unequivocal and knowing waiver of his rights to a direct appeal and to the assistance of counsel." (Pet'r's Br. at 5.) By not obtaining an unequivocal waiver, Roberts claims he was not "inform[ed] . . . of the dangers and disadvantages of self-representation." (Pet'r's Br. at 5.) The argument continues that, because Roberts was unaware of the dangers, the court should toll the period of time while he attempted to raise money to secure new counsel, conducted legal research, and sought the assistance of jail house lawyers.

In *Owens v. Boyd*, 235 F.3d 356 (7th Cir. 2001), the Court of Appeals for the Seventh Circuit rejected a similar claim under § 2244(d)(1)(D). In *Owens*, the petitioner argued that his federal habeas corpus petition should be deemed timely filed under the saving provision of § 2244(d)(1)(D). The court described the petitioner's position as follows:

> He says that he did not realize in June 1997 that his appointed lawyer was leaving him to his own devices, and that he did not appreciate until March 1998 that no request for discretionary review had been filed. Then, Owens contends, he spent a further nine months investigating what he could do about his situation, finally concluding in December 1998 that he could seek collateral relief on the ground of ineffective assistance. According to Owens sometime in December 1998 was "the date on which the factual predicate of the claim or claims presented could have been discovered

through the exercise of due diligence", § 2244(d)(1)(D), and thus only then that the year in which to seek federal review commenced.

*Owens*, 235 F.3d at 359.

The Seventh Circuit Court of Appeals rejected Owens' argument. In doing so, the court stated:

Owens's approach disregards the language of the statute. He proposes that the year to file a federal petition begins when a prisoner *actually understands* what legal theories are available. That is not what § 2244(d)(1) says. First, the time commences when the factual predicate "could have been discovered through the exercise of due diligence", not when it was actually discovered by a given prisoner. Second, the trigger in § 2244(d)(1)(D) is (actual or imputed) discovery of the claim's "factual predicate", not recognition of the facts' legal significance. . . . Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance. If § 2244(d)(1) used a subjective rather than an objective standard, then there would be no effective time limit, as Owens's case illustrates. Like most members of street gangs, Owens is young, has a limited education, and knows little about the law. If these considerations delay the period of limitations until the prisoner has spent a few years in the institution's law library, however, then § 2244(d)(1) might as well not exist; few prisoners are lawyers.

*Id.*

Roberts has failed to demonstrate the applicability of § 2244(d)(1)(D). The argument advanced by Roberts is nearly identical to the argument rejected by the Seventh Circuit in *Owens*. Roberts claims he was "left to his own devices," and "only allowed to spend an hour a week at the prison library." (Pet'r's Br. at 8.) In addition, Roberts states he spent "several months" researching various aspects of his case. (Pet'r's Br. at 7.) However, just as in *Owens,* the time commenced when Roberts knew the important facts, not when he recognized their legal significance. Because Roberts does not allege the discovery of any new facts through the exercise of due diligence, § 2244(d)(1)(D) is not applicable.

Roberts next argues that he should be entitled to equitable tolling. Recently in *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010), the United States Supreme Court held that in "appropriate cases" equitable tolling applies to § 2244(d). The Court stated that to be entitled to equitable tolling

a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Id.* at 2562 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

In *Holland,* the Court declined to determine whether the petitioner was entitled to equitable tolling because "no lower court has yet considered in detail the facts of this case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant extraordinary relief." *Id.* at 2565. However, the Court stated that "the facts of this case present . . . serious instances of attorney misconduct" that "may well be an 'extraordinary' instance in which petitioner's attorney's conduct constituted far more than . . . 'excusable neglect.'" *Id.* at 2564. The Court summarized the attorney misconduct as follows:

> Here, Collins [the petitioner's attorney] failed to file Holland's [the petitioner's] federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to designate the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Id.*

In addition, the *Holland* Court determined that the District Court's ruling that petitioner did not diligently pursue his appeal was "incorrect." *Id.* at 2565. The Supreme Court summarized the Petitioner's pursuit of his appeal:

> Here, Holland [the petitioner] not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins [the petitioner's attorney]- the central impediment to the pursuit of his legal remedy- removed from his case. And, the *very day* that Holland discovered that his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court.

10

*Id.*

Roberts' argument for equitable tolling falls well short of the "extraordinary instance" of attorney misconduct and "reasonable diligence" found in *Holland. Id.* at 2564-65. In support of his equitable tolling claim, Roberts again argues that "an attorney abandoning a client absent an unequivocal waiver and without informing him of the dangers and disadvantages of proceeding pro se is an extraordinary circumstance beyond his control." (Pet'r's Br. at 9.)

There is no indication that extraordinary circumstances prevented Roberts from pursuing his rights. This court has already determined that Roberts was not "abandoned" by his attorney. Rather, Roberts' attorney determined that there were no remaining appealable issues and informed Roberts of his no-merit option. Once Roberts' counsel determined the appeal to be without merit, Roberts no longer had a right to counsel. *See supra State ex rel. Schmelzer v. Murphy*, 201 Wis. 2d 246, 252, 548 N.W.2d 45 (1996). Furthermore, Roberts did not exercise reasonable diligence in pursuing his appeal. In fact, Roberts did not even reply to the December 3, 2002 letter, with full knowledge that the timeliness of his appeal was of immediate concern. As such, Roberts' argument for equitable tolling falls well short of the extraordinary circumstances and reasonable diligence necessary for such relief.

In addition, the Seventh Circuit has made clear that the provisions of 28 U.S.C. § 2244(d) are to be applied strictly. In *United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir. 2000), the petitioners filed their petition one day late. Nonetheless, the Seventh Circuit dismissed the petition for untimeliness, refusing to extend equitable tolling. *Id.; see also Tucker v. Kingston,* 538 F.3d 732, 734 (7th Cir. 2008) (petition filed twenty-six days late dismissed for untimeliness); *Wilson v. Battles,* 302 F.3d 745, 748 (7th Cir. 2002) (petition that was nineteen days late dismissed for untimeliness). This court has previously determined that the period for Roberts to file his federal habeas petition

expired on December 3, 2003. Roberts did not file his federal habeas petition until more than six years had passed. As such, Roberts is not entitled to equitable tolling.

Finally, Roberts asserts that the equal protection claim raised in his federal habeas petition is timely. That claim reads as follows, "[b]y not applying state and federal law requiring that a defendant must be informed of the dangers and disadvantages of proceeding pro se for any waiver of counsel to be valid, [the Wisconsin Court of Appeals] violated the petitioner's right to equal protection." (Pet'r's Br. at 3.) Roberts argues this claim is timely because it "did not accrue until the Wisconsin Court of Appeals issued [its] decision which completely ignored the petitioner's right to be informed of the dangers and disadvantages of self-representation before a knowing waiver of counsel could occur." (Pet'r's Br. at 10.)

However, the Wisconsin Court of Appeals addressed Roberts' argument that he was not aware of the dangers and disadvantages of proceeding pro se when it determined that he knowingly and voluntarily waived his right to counsel on direct appeal. *State ex rel. Roberts v. Thurmer*, 2008 WI App 160, ¶ 10, 314 Wis. 2d 507, ¶ 10, 758 N.W.2d 224, ¶ 10 (unpublished). Therefore, Roberts' argument that his right to equal protection was violated because the Wisconsin Court of Appeals disregarded his claim is without merit and will be denied as moot.

In conclusion, the appropriate starting point for Roberts' one year filing period is determined by § 2244(d)(1)(A). Accordingly, Roberts' filing period ran from December 3, 2002, the deadline for filing his state notice of appeal, until December 3, 2003. In addition, this court finds that Roberts is not entitled to equitable tolling. Roberts' federal habeas corpus petition was filed in untimely fashion under the provisions of 28 U.S.C. § 2244(d). Thus, it will be dismissed.

There is one final matter to address. The recently amended provisions of Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

> a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, the habeas petition is denied on procedural grounds without addressing the prisoner's underlying constitutional claim, a certificate of appealability is issued only if the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Jimenez v. Quarterman,* 129 S. Ct. 681, 684 n.3 (2009) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). As the Seventh Circuit similarly held, "[i]f success on a non-constitutional issue is essential . . ., and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

In my opinion, and for the reasons set forth in this decision denying Roberts' habeas petition, none of Roberts' claims warrant a certificate of appealability. Put simply, the statutory timeliness of Roberts' petition is a straightforward issue, and this court does not believe that a reasonable jurist would find it debatable whether this court erred in resolving this non-constitutional question. Because

this finding alone is sufficient grounds to deny a certificate of appealability, I need not determine whether the petition states a valid constitutional question that jurists of reason would find debatable. Consequently, the court will deny Roberts a certificate of appealability.

Of course, Roberts retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**NOW THEREFORE IT IS ORDERED** that Roberts' petition for a writ of habeas corpus be and hereby is **DISMISSED** for untimeliness;

**IT IS FURTHER ORDERED** that a certificate of appealability be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly

**SO ORDERED** this 22nd day of October 2010 at Milwaukee, Wisconsin.

                **BY THE COURT:**

                s/ William E. Callahan, Jr.
                WILLIAM E. CALLAHAN, JR.
                United States Magistrate Judge